UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES DEPARTMENT OF STATE,** *et al.*,<br><br>　　Defendants. | Civil Action No. 18-563 (JEB) |

## MEMORANDUM OPINION

Plaintiff Center for Biological Diversity is concerned that the United States has been less than timely in complying with its reporting obligations under the United Nations Framework Convention on Climate Change. About two months after the U.S. missed a January 1, 2018, reporting deadline, CBD filed this suit. It seeks both to compel — via the Administrative Procedure Act and mandamus — the submission of two required reports and to obtain — pursuant to the Freedom of Information Act — records related to their preparation. Defendants now move to dismiss the APA- and mandamus-based counts, maintaining that CBD does not have standing to bring them and has not stated a claim. As the Court agrees with the former argument, it need not reach the latter. It will, consequently, grant Defendants' Motion but permit Plaintiff an opportunity to amend.

**I.　Background**

In the early nineties, the United States entered the UNFCCC, a multilateral agreement seeking to stabilize greenhouse-gas concentrations. See ECF No. 8 (Amended Complaint), ¶ 18. The Convention establishes a secretariat to support the operation of the treaty and an annual

1

Conference of the Parties through which signatories review and make decisions about implementation. See UNFCCC, Arts. 7.1, 7.2, 8. The UNFCCC also includes several provisions governing reporting requirements and exchange of information among the parties. Id., Arts. 4, 12. CBD's claims here specifically concern two regular reports that parties submit through the secretariat: the "national communication" and the "biennial report," which the Conference of the Parties required to be produced by January 1, 2018. See Am. Compl., ¶¶ 2, 42, 45.

Our country has yet to submit either. On February 5, 2018, CBD sent the State Department a letter noting this deficiency and indicating that it intended to file suit unless the Government agreed to a schedule to complete and submit the reports. See Am. Compl., ¶ 23. This suit followed in March. The Complaint alleges two sets of claims. The first set — including the First and Second Claims for Relief — contains treaty-based claims seeking APA- and mandamus-based relief to compel Defendants to submit the information that was due January 1. The second set — including the Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief — comprises FOIA counts seeking records related to preparation of the reports and the Government's delays in submitting them. Defendants now move to dismiss the former — *viz.*, the non-FOIA counts — contending that CBD lacks standing and has failed to state a claim. The Court need only consider the standing issue.

## II. Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir.

2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original).

## III. Analysis

Not every disagreement merits a lawsuit. Federal courts decide only "cases or controversies," a phrase given meaning by the doctrine of "standing." See Whitmore v. Arkansas, 495 U.S. 149, 154–55 (1990); U.S. Const. art. III. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. To have standing, a party must, at a constitutional minimum, meet the following criteria. First, the plaintiff "must have suffered an 'injury in fact' — an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be

'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. (alterations in original) (citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." U.S. Ecology, Inc., 231 F.3d at 24.

Here, Defendants argue that CBD has faltered at the first requirement: injury-in-fact. See ECF No. 20 (Def. Mot. to Dismiss) at 6–13; ECF No. 27 (Def. Reply) at 3–4, 6. CBD asserts two distinct injuries, which the Court will address sequentially.

### A. Informational Injury

Plaintiff first contends that Defendants have "an enforceable legal obligation to complete and publicly release" the UNFCCC reports and that their neglecting to do so has inflicted an "informational injury." See ECF No. 25 (Pl. Opp.) at 14 (emphasis omitted). While an "inability to obtain information" that a defendant is legally obligated to "make public" does constitute an injury-in-fact, see Federal Elections Comm'n v. Akins, 524 U.S. 11, 21 (1998), CBD has not facially satisfied that test here. In other words, it has not alleged that the Government is required to make the UNFCCC reports publicly available, nor do the First and Second Claims for Relief even seek public disclosure.

There is good reason for such omission. The two counts at issue involve an APA remedy and mandamus relief to redress the Government's "fail[ure] to complete and submit" the reports by the January 1 deadline. See Am. Compl., ¶¶ 42, 45. That is, Plaintiff seeks to enforce a deadline provision that itself contains no disclosure requirement. The D.C. Circuit has been clear that in this circumstance a plaintiff lacks the "*sine qua non* of informational injury: It is seeking to enforce a . . . deadline provision that by its terms does not require the public

disclosure of information." Friends of Animals v. Jewell, 828 F.3d 989, 992 (D.C. Cir. 2016). If CBD can make out an injury-in-fact, therefore, its harm cannot be an informational one.

B.    Organizational Injury

Plaintiff next maintains that its educational and advocacy efforts have suffered in the absence of the January 1 reports. See Pl. Opp. at 16–17. It thus alleges an injury to itself as an organization. Generally, organizations can support standing in one of two ways: They can sue either on their own behalf ("organizational standing") or on behalf of their members ("representational standing"). See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 132 (D.C. Cir. 2006). In its briefing, CBD invokes only the former. See Pl. Opp. at 16. Indeed, the Amended Complaint can only plausibly support that ground because, although it does once make reference to "harm[]" to "[CBD] and its members," Am. Compl., ¶ 14 (emphasis added), it never — as it must to support representational standing — "specifically 'identif[ies] members who have suffered the requisite harm.'" Chamber of Commerce v. EPA, 642 F.3d 192, 199–200 (D.C. Cir. 2011) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009)). To prevail, consequently, Plaintiff must show that the organization itself suffered an injury-in-fact. See Equal Rights Ctr. v. Post Properties, 633 F.3d 1136, 1138 (D.C. Cir. 2011).

To satisfy Article III, an organization must allege a "concrete and demonstrable injury to [its] activities." Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted). The meaning of this phrase is evident most clearly from its opposite: "a mere setback" to the organization's "abstract social interests is not sufficient." Equal Rights Ctr., 633 F.3d at 1138 (internal quotation marks omitted). The Circuit operationalizes this distinction in a two-part test: The Court must ask first "whether the agency's action or omission to act injured

5

the [organization's] interest," and then, if satisfied, whether "the organization used its resources to counteract that harm." People for the Ethical Treatment of Animals v. USDA (PETA), 797 F.3d 1087, 1094 (D.C. Cir. 2015) (internal quotation marks omitted); accord Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity, 878 F.3d 371 (D.C. Cir. 2017) (employing same test); Food & Water Watch, 808 F.3d at 919 (same); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (finding organizational injury based on an "injury to the organization's activities" followed by "the consequent drain on the organization's resources").

Here, the Court need not spill much ink parsing the first prong because any allegation that would support the second is plainly absent. That is, while CBD asserts that it "relies on information in the . . . Report both to educate its members and the public," Am. Compl., ¶ 13, at no point does it give any hint that it has "used its resources to counteract that harm." Food & Water Watch, 808 F.3d at 919. Indeed, the only assertion that even relates to the subject of expenditure is CBD's allegation that it "has been required to expend resources to prosecute this action." Am. Compl., ¶ 40. Resources spent on — or in anticipation of — litigation, however, cannot establish injury. See Food & Water Watch, 808 F.3d at 919; see also Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.").

Nor does Plaintiff's briefing assuage the Court's concerns. Its only reference to resources appears in a footnote in which CBD, oddly, "recognizes that this form of organizational standing cannot be predicated only on resources expended for litigation or lobbying." Pl. Opp. at 18 n.19 (citing PETA, 797 F.3d at 1093). Plaintiff elaborates only that "while [it] included in the Amended Complaint all of the activities for which it relies on the . . . Report, in proving its

standing at summary judgment it will limit its evidence to those activities cognizable for Article III injury, which include, as [CBD] also alleges, its educational and other advocacy activities." Id. To the extent Plaintiff appears to discount as necessary any showing on the second prong, it misunderstands the law, which requires both that the organization's interest be injured, and also that it expend resources to counteract that harm. See PETA, 797 F.3d at 1094; Elec. Privacy Info. Ctr., 878 F.3d 371; Food & Water Watch, 808 F.3d at 919; Havens Realty Corp., 455 U.S. at 379; see also Center for Responsible Science v. Gottlieb, 2018 WL 5251741, at *4 (D.D.C. Oct. 22, 2018).

\* \* \*

The Court notes that CBD does not have a strenuous burden at the motion-to-dismiss stage. See Holt v. Am. City Diner, Inc., 2007 WL 1438489, at *5 (D.D.C. 2007) (citing Lujan, 504 U.S. at 561); see also American Society for Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus, 317 F.3d 334, 338 (D.C. Cir. 2003) (noting the "lesser standard required to show standing on a motion to dismiss"). As is, however, the Amended Complaint does not satisfy even that standard. Given that CBD may well ultimately be able to clear this hurdle, the Court will not dismiss its claims outright. Instead, it will dismiss the First and Second Claims for Relief without prejudice and give Plaintiff thirty days to file an amended complaint if it so chooses.

## IV. Conclusion

Because Plaintiff cannot satisfy the constitutional requirements for Article III standing, the Court will grant Defendants' Motion to Dismiss, while permitting leave to amend. An Order

to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 8, 2018