UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL
DIVERSITY,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

    Defendants.

Civil Action No. 18-563 (JEB)

## MEMORANDUM OPINION

The Center for Biological Diversity takes exception to the State Department's laggard pace in complying with the United States' reporting obligations under the United Nations Framework Convention on Climate Change. After the Government missed its January 1, 2018, deadline to file the two reports at issue in this case, CBD filed suit. The Court found that it lacked standing to press two of its counts and dismissed them without prejudice. Hoping to remedy this insufficiency, Plaintiff has filed a Second Amended Complaint. The Government now moves to dismiss two of the claims — essentially the same ones as before — again contending that CBD lacks standing to bring them and that it also has not stated a claim. Agreeing once again with Defendants on the former point, the Court will grant the Motion without reaching the latter issue.

**I.    Background**

The facts relevant to this dispute were recounted nearly in their entirety in the Court's previous Opinion. See Ctr. for Biological Diversity v. Dep't of State, 2018 WL 5840515 (D.D.C.

1

Nov. 8, 2018) (CBD I).  Nevertheless, a brief rehearsal is helpful here, and the Court, as it must at this stage, treats the facts alleged as true.

In the early nineties, the United States entered the UNFCCC, a multilateral agreement with the worthy goal of stabilizing greenhouse-gas concentrations.  See ECF No. 31 (Second Amended Complaint), ¶ 18.  The Convention establishes a secretariat to support the operation of the treaty and an annual Conference of the Parties through which signatories review and make decisions about implementation.  See UNFCCC arts. 7.1, 7.2, 8.  The UNFCCC also includes several provisions governing reporting requirements and exchange of information among the parties.  Id. arts. 4, 12.  CBD's claims here specifically concern two regular reports that parties submit through the secretariat: the "National Communication" and the "Biennial Report."  SAC, ¶ 2.  Guidance for the content and timing of those submissions is not contained in the Convention itself, but rather in a series of decisions by the Conference of the Parties.  See, e.g., Dec. 10/CP.13, ¶ 2 ("Annex I Parties" — including the United States — are requested "to submit to the secretariat a fifth national communication by 1 January 2010, in accordance with Article 12, paragraphs 1 and 2 of the Convention."); Dec. 2/CP.17, ¶¶ 13–15 ("Parties shall submit a full national communication every four years" and a biennial report beginning January 1, 2014.).

The United States has yet to submit either of the two reports.  Understandably unhappy with the abdication of those duties, CBD filed suit in March 2018.  Defendants originally moved to dismiss two of CBD's claims for relief — namely, APA- and mandamus-based counts seeking to compel the Government to submit the information that was due January 1, 2018.  See ECF No. 20 (Defendants' First Motion to Partially Dismiss).  The Court agreed that Plaintiff had failed to

demonstrate standing and — without reaching Defendants' second contention that CBD had not stated a claim — dismissed the two counts in question with leave to amend the Complaint.

Accepting the invitation, CBD filed its Second Amended Complaint on December 7, 2018.  Similar to the previous Complaint, it alleges two sets of claims.  The first set — that is, the First and Second Claims for Relief — contains treaty-based claims seeking APA- and mandamus-based relief to compel Defendants to submit the information that was due January 1, 2018.  The second set — including the Third, Fifth, Sixth, and Seventh Claims for Relief — comprises Freedom of Information Act counts seeking records related to preparation of the reports and the Government's delays in submitting them.  (A Fourth Claim for Relief appears to have been omitted by mistake.)  Defendants now move to dismiss the First and Second Claims for Relief — *viz.*, the non-FOIA counts — contending again that CBD lacks standing and has failed to state a claim.  As before, the Court need only consider the standing issue.

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed.

Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original).

### III. Analysis

Not every disagreement merits a lawsuit. Federal courts decide only "cases and controversies," a phrase given meaning by the doctrine of "standing." See Whitmore v. Arkansas, 495 U.S. 149, 154–55 (1990); U.S. Const. art. III. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. To have standing, a party must, at a constitutional minimum, meet the following criteria. First, the plaintiff "must have suffered an 'injury in fact' — an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. (alterations in original)

(citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." US Ecology, Inc., 231 F.3d at 24.

Here, Defendants argue that CBD has faltered at the first requirement: injury-in-fact. See ECF No. 32 (Def. Mot.) at 8. In the previous go-round, CBD asserted "two distinct injuries": one informational and one organizational. See CBD I, 2018 WL 5840515, at *2. Now it alleges only an informational one. See ECF No. 38 (Pl. Mot. for Partial Summary Judgment) at 9 ("[T]he Center is only pursuing Article III standing based on informational injury."). The Government asserts first that, as a threshold matter, Plaintiff — as an organization — cannot assert only an informational injury and must instead satisfy the two-pronged organizational-injury inquiry announced by the D.C. Circuit. See ECF No. 41 (Def. Reply) at 5. It next maintains that, even were only informational injury required, none is present here. See Def. Mot. at 9. The Court addresses these in turn, finding that the Government is right on the second point — namely, that CBD has not suffered an informational injury here. It need not, therefore, examine the second and third of the showings required for standing.

    A.    Necessity of "Organizational" Injury

Defendants' threshold point on the relationship between informational and organizational injury need not take up much space, since it is not necessary to resolve the case. Because the Court believes the law in this Circuit is reasonably settled on this issue, however, it offers a response as clarification, lest declining to pass on it be taken as an acknowledgment that the issue is especially thorny.

The D.C. Circuit has established distinct frameworks for informational and organizational injury. For the former, a court engages in a two-step inquiry: a plaintiff suffers an informational

5

injury where it "alleges that . . . [first,] it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and [second,] it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." Friends of Animals v. Jewell, 828 F.3d 989, 992 (D.C. Cir. 2016) (citation omitted). As to the latter, there is a different two-pronged test: first "whether the [Government's challenged] action or omission to act injured the organization's interest[,] and second, whether the organization used its resources to counteract that harm." People for the Ethical Treatment of Animals v. Dep't of Agric., 797 F.3d 1087, 1094 (D.C. Cir. 2015) (internal quotations, citation, and alteration omitted). Defendants assert that the two frameworks are cumulative for an organization asserting an informational injury. That is, in such circumstances, an organization needs to show both that it is suffering harm from the deprivation of the information and then also that it expended resources to counteract that harm. See Def. Reply at 5.

The two frameworks, however, do not merge as the Government suggests. Deprivation of information to which an organization has a statutory right and the loss of which causes harm is — as it would be for an individual — sufficient to confer standing. In other words, there is no need for the plaintiff to allege resource expenditure. Were Article III to require more, it is difficult to understand how organizational plaintiffs would have standing for FOIA suits without pleading such an expenditure. Cf. Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) ("As when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent [Federal Advisory Committee Act] allows constitutes a sufficiently distinct injury to provide standing to sue."). Yet courts have not hinted that such an allegation would be required in the ever-

6

burgeoning number of FOIA suits in this Circuit. While the D.C. Circuit has not, in elaborating the informational- and organizational-injury doctrines, specifically clarified their relationship, its analysis has been consistent with the understanding that organizations asserting informational injury need not assert any resource expenditure to establish standing. See <u>Envt'l Def. Fund v. EPA</u>, 922 F.3d 446, 452 (D.C. Cir. 2019) (finding in APA case that EDF had informational standing based only on deprivation of information); <u>Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.</u>, 659 F.3d 13, 24–25 (D.C. Cir. 2011) (finding ASPCA, suing pursuant to Endangered Species Act citizen-suit provision, lacked informational injury but nevertheless separately analyzing whether it had organizational injury); <u>see also</u> <u>Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity</u>, 878 F.3d 371, 378–79 (D.C. Cir. 2017) (analyzing in APA suit two theories of injury separately while acknowledging that EPIC had not asserted an organizational injury distinct from denial of information). CBD, consequently, need only establish an informational injury to support standing; it does not, as the Government suggests, have to show the resource expenditure required by the second prong of the organizational-injury analysis.

B.  <u>Informational Injury</u>

With that understanding in place, the Court can now move to the central issue in this case — namely, whether Plaintiff has established informational injury here. To refresh, a plaintiff suffers an informational injury where it "alleges that . . . [first,] it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and [second,] it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." <u>Friends of Animals</u>, 828 F.3d at 992 (citation omitted). The statutory-disclosure requirement need not be specific to the plaintiff, but

7

must include the plaintiff. See Feld, 659 F.3d at 23 (explaining that defendant must be "obligated to disclose certain information that the plaintiff has a right to obtain"). In evaluating informational standing, moreover, a court must credit, at least to some extent, a plaintiff's "view of the law." Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998). That does not mean, however, that "a court's informational-standing analysis is constrained by a plaintiff's assertion that a particular disclosure provision requires the disclosure of information on the terms the plaintiff dictates." New Eng. Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv., 208 F. Supp. 3d 142, 161–62 (D.D.C. 2016) (citing Friends of Animals, 828 F.3d at 993). That is, a court need not "accept a plaintiff's threshold legal argument about whether and to what extent a statute requires disclosure at all." Id. at 163. Rather, it examines the statutory or other legal authority to determine whether a disclosure obligation exists. Id.

CBD asserts two theories of informational injury here. The first is that the treaty supplies a disclosure obligation that applies directly to Defendants, requiring them to publicly disclose the reports at issue. See Pl. Mot. at 12–16. The second is that the treaty at least requires the Government to submit the reports at issue to a treaty body, which in turn will release them publicly. Id. at 16. The Court addresses each of these hypotheses in turn. Ultimately finding no disclosure obligation in either, the Court need not address the question of harm.

        1.    *Direct Disclosure*

On the first theory, Plaintiff comes up short. There is no provision of the treaty requiring the State Department to publicly disclose the reports in question. In the sole paragraph of the Second Amended Complaint that discuses this issue, CBD cites UNFCCC Articles 4 and 12 as containing the relevant language. See SAC, ¶ 20. In its briefing, Plaintiff also relies on Articles 6 and 7. See Pl. Mot. at 12–13. But none of these provisions "requires" the State Department

"to disclose" the reports to the public. See Friends of Animals, 828 F.3d at 992. Articles 6, 7, and 12 need only brief examinations, while Article 4 is slightly more involved.

Articles 6 and 7 respectively describe the education, training, and public-awareness initiatives that parties to the Convention should undertake and the role of the Conference of the Parties in implementing the Convention, including some functions that primarily promote the flow of information among parties and to the public. While those provisions reflect the Convention's commitments to transparency, see Pl. Mot. at 12–13, they do not contain specific disclosure requirements that would support injury here. Article 12 governs the communication of information by signatories to the Conference of the Parties; none of its subsections mandates — although they likewise explicitly do not bar — Defendants' disclosure of information to the public.

Finally, Article 4 describes each party's "Commitments." None of those commitments, however, involves disclosing the reports Plaintiff seeks to the public. Indeed, Article 4 provides that the communication of the reports relevant here is governed by the requirements of Article 12, which, as discussed, does not require any signatory itself to publicly release anything. See UNFCCC art. 4.1(j); see also id. art. 4.2(b); Dec. 10/CP.13, ¶ 2 ("Requests Annex I Parties" — including the United States — "to submit to the secretariat a fifth national communication by 1 January 2010, in accordance with Article 12, paragraphs 1 and 2 of the convention.").

CBD points to two subsections of Article 4 requiring parties to themselves publish — that is, publicly disclose — some information. See SAC, ¶ 20 (citing UNFCCC art. 4.1(a), 4.1(b)); see also Pl. Mot. at 11–12, 14 (citing UNFCCC art. 4.1(b)). Article 4.1(a), however, requires parties to "publish . . . national inventories of anthropogenic emissions" in "accordance with Article 12." Those national inventories are not the two reports CBD is seeking in this suit. See

9

SAC, ¶ 2. Article 4.1(b) provides for the "publi[cation]" of "national and . . . regional programmes containing measures to mitigate climate change by addressing anthropogenic emissions." While any publication pursuant to Article 4.1(b) may contain information overlapping with the communications parties are required to produce to the COP under Article 12, see Def. Mot. at 14, this article does not contemplate disclosure of the specific reports at issue here. Nor does it invoke Article 12, the provision that governs the procedures by which the particular reports Plaintiff seeks are produced. See Dec. 10/CP.13, ¶ 2.

CBD appears to acknowledge as much, suggesting that the provision, "at bare minimum," requires the disclosure of "at least some of the vital information the Center seeks to obtain." Pl. Mot. at 14. Plaintiff elaborates that, although "Defendants . . . suggest that the information that must be released under Article 4.1[(b)] is not necessarily the same information than that which will be contained in the [reports at issue]," that is "of no moment, because the release of even some of the information to the public will at least partially redress the Center's injury." Id. at 15; see also ECF No. 43 (Plaintiff's Reply) at 4 (emphasizing that because "Defendants concede that . . . Article 4.1(b) includes a . . . requirement" to "publish . . . something[,]" it has established standing since "certainly something would be better than nothing, and release of any of the information sought would at least partially redress Plaintiff's injury") (internal quotation marks and citations omitted).

But CBD's retorts miss the point: the issue is not redressability, but injury. To have an informational injury, it must show that it has "been deprived of information that . . . a statute [or other legal authority] requires the government or a third party to disclose to it." EPIC, 878 F.3d at 378. Their Complaint seeks only the two specific reports, so the Court must look to whether Defendant has an obligation to publish those — which it does not. That the treaty might require

public disclosure of some <u>other</u> information unrelated to its claim in this deadline suit does not establish the requisite injury. To the extent the information contemplated by Article 4.1(b) is not entirely unrelated — because both parties appear to agree there may be <u>some</u> overlap between the information it describes and what is in the reports CBD seeks — Plaintiff's pleadings have left that connection unquantified and speculative.

### 2. *Third-Party Disclosure*

Plaintiff's second theory of informational injury presents a closer question. To remind the reader, CBD contends that a disclosure obligation is present in the treaty because it requires the State Department to convey some information to the COP, which the COP will then release publicly. <u>See</u> Pl. Mot. at 16. It maintains that the disclosure's coming by way of a third party, rather than from the Government itself, is no obstacle to establishing standing. <u>Id.</u>

So far, so good for CBD. It is correct that the Convention provides that the "secretariat shall make communications by Parties under [Article 12]" — including the reports at issue — "publicly available at the time they are submitted to the Conference of the Parties." UNFCCC art. 12.10. Plaintiff is also correct that a third party's effectuation of a statutory disclosure requirement is not necessarily a bar to standing. <u>See</u> <u>Akins</u>, 524 U.S. at 13–14 (finding standing where American Israel Public Affairs Committee, not FEC, would have had to make disclosures at issue pursuant to Federal Election Campaign Act of 1971); <u>Public Citizen</u>, 491 U.S. at 449–50 (finding standing in suit regarding disclosures by American Bar Association under Federal Advisory Committee Act).

The D.C. Circuit has clarified, however, that the disclosure cannot be effectuated by just any third party. Rather, "[t]o establish [informational] injury, a plaintiff must espouse a view of the law under which the defendant (<u>or an entity it regulates</u>) is obligated to disclose certain

11

information that the plaintiff has a right to obtain." Feld, 659 F.3d at 23 (emphasis added). In Akins, AIPAC would have been required to make the disclosure — but pursuant to the defendant FEC's administration of FECA. See 524 U.S. at 13–14. Similarly, in Public Citizen, Plaintiff sued DOJ to secure disclosures that would have been effected by the ABA, but as required by FACA. See 491 U.S. at 449–50. The treaty body that would make the disclosure in this case, conversely, is not an entity regulated by the Government. The disclosure obligation applicable to the COP under Article 12, consequently, cannot confer informational injury. The Court acknowledges that the D.C. Circuit has not elaborated on this "regulated-entity" requirement, but this Court is nonetheless bound to follow its direction. That is sufficient to dispose of this case.

In addition, the finding that the disclosure requirement applicable to COP does not give rise to informational injury appears for a separate reason to be consistent with the D.C. Circuit's instruction in this area, specifically that found in Friends of Animals, 828 F.3d 989. There, the Circuit seems to have limited the kinds of statutory entitlements that give rise to informational injury, reasoning that disclosure requirements must be sufficiently direct to support standing. The provision on which Plaintiff relies is similar to the one that the Circuit held was insufficient in Friends of Animals.

To elaborate, the court there held that an environmental advocacy group had not established standing to challenge the Department of Interior's failure to timely respond to a petition to reclassify several species as endangered or threatened. Id. at 990. The group had brought suit alleging that the agency had violated the Endangered Species Act because it had flouted a statutory deadline that included a publication requirement. Specifically, the Department was required, within twelve months of receiving a petition to designate a species as endangered or threatened, to make and publish in the Federal Register a finding about whether

the requested action was not warranted, warranted, or warranted but precluded. Id. at 990–991; see also 16 U.S.C. § 1533(b)(3)(B)(i)–(iii) (requiring that Secretary within twelve months make finding that the "petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register" and similar for warranted and warranted-but-precluded findings). The Circuit held that Friends of Animals did not suffer informational injury because "it [was] seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information." Friends of Animals, 828 F.3d at 992. That was so, perhaps surprisingly, even though the provision in question also required publication of the finding.

Here, similarly, the connection between the deadline provision on which CBD relies and the disclosure provision seems insufficiently direct. The deadline provision does not, by its terms, require disclosure. Rather, a separate and additional provision does, once the action required by the deadline provision is effected. As a result, if there was no standing in Friends of Animals, it is hard to understand how CBD would have it here. For this separate reason, accordingly, informational injury does not exist.

## IV. Conclusion

The Court will, therefore, grant Defendants' Motion to Partially Dismiss the Second Amended Complaint. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 12, 2019